466

No. 37,031

WILLIAMS FACTORS, INC., *Appellant*, v. C. W. PHILLIPS, Trustee of the Estate of R. W. SMITH AND COMPANY, INC., a Bankrupt (substituted for R. W. SMITH AND COMPANY, INC.), *Appellee*.

(190 P. 2d 189)

Opinion filed March 6, 1948.

*George D. Miner* and *Paul L. Aylward*, of Ellsworth, were on the brief for the appellant.

*V. E. Danner* and *H. A. Santry*, of Ellsworth, were on the brief for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover possession of leased personal property, together with a balance alleged to be due under the written lease. The defendant prevailed and plaintiff appeals. The issue turns upon the proper construction of the lease.

Briefly summarized, the plaintiff alleged in its petition, filed December 2, 1946, that, being the owner of "one (1) 1½ yard Lorain Model 77 shovel, serial No. 5131, with 45' dragline boom together with fairleads and powered by Caterpillar D-11,000 engine," it leased the machinery so described to the defendant by written lease for a term of twelve months, terminating on July 14, 1947; that the defendant was to pay monthly rental payments on or before the 24th day of each month, commencing with July 24, 1946, each rental payment to be in the sum of $1,050; that the defendant paid the monthly rentals for July and August but had failed and refused to make any further payments; that by the terms of the lease, the unpaid balance of the twelve monthly payments of $12,600, would forthwith become due and payable in the event of default by the

defendant, and the plaintiff might immediately repossess the property; that by virtue of the default in making the further payments, the defendant was indebted to the plaintiff in the sum of $10,500, together with expenses incurred in repossessing and reletting the property, being a total amount of $11,000; that if defendant could not give possession to the plaintiff, the plaintiff should have additional judgment for the sum of $10,000 damages. Later in the trial, plaintiff withdrew its claim for damages.

Attached to and made a part of the petition were a copy of the written lease and a copy of a letter dated July 9, 1946, addressed to the defendant by an agency of the plaintiff, in which letter it was said:

"R. W. Smith & Co.         "July 9, 1946.
"Charleston,
"West Virginia.
"Gentlemen:

"Enclosed herewith please find Bill of Lading for the Lorain 77 shovel, serial No. 5131. Due to an oversight, we failed to forward same to you sooner.

"This will also confirm wire sent to you this day, stating that we are tracing the shipment.

"We discussed with our bank, time for payment, and it is satisfactory for you *to commence payments on July 24th, and to make monthly payments on the 24th of each month thereafter.*

"Hoping that the machine will arrive soon and that you will have every success with it, we remain,

"Very truly yours,
"ECONOMY COMPANY, INC.
"By: GEORGE A. SPITZER"

(Italics supplied.)

Provisions of the lease executed June 10, 1946, pertinent to the issue here are as follows:

. . . . . . . . . . . . .

"3. The term of this lease shall be twelve (12) months beginning June 15, 1946 and terminating at midnight on June 14th, 1947.

"4. The Lessee agrees to pay the Lessor the sum of Six Thousand ($6,000.00) Dollars in advance and upon the execution of this lease.

"5. The Lessee agrees to pay the Lessor the total rental for said chattel of Twelve Thousand Six Hundred ($12,600.) Dollars, payable as follows:

"Ten Hundred Fifty ($1050.) Dollars on July 7, 1946, —and—

"Ten Hundred Fifty ($1050.) Dollars on the seventh day of each month thereafter, to and including June 7, 1947.

"6. In the event that the Lessee shall continue to retain the said chattel after the expiration of the twelve month term of this lease, then, in addition

to any other rights or remedies the Lessor may have, the Lessee shall pay the Lessor the same rental of Ten Hundred Fifty ($1050.) Dollars per month in advance for the period of such retention.

. . . . . . . . . . . . . . .

"9. The Lessee agrees, at its own expense, to maintain insurance on the said chattel and attachments against fire and such other risks, if any, as the Lessor may designate in the sum of Twelve Thousand Six Hundred ($12,600.) Dollars in mutual favor of the Lessor and the Lessee as their interests may appear. Upon request of the Lessor the Lessee agrees to cause said policy of insurance or a certificate thereof to be delivered to the Lessor.

. . . . . . . . . . . . . . .

"11. In the event of default by the Lessee in the performance of any of the covenants or agreements herein contained, all of the unpaid balance of said rental of Twelve Thousand Six Hundred ($12,600.) Dollars shall, unless the Lessor otherwise elects, become forthwith due and payable without any further notice or demand, and in addition to any other rights or remedies that the Lessor may have, the Lessor may immediately repossess the said chattel and lease or otherwise dispose of the same in such manner as the Lessor may see fit, crediting against the Lessee's obligations hereunder the net rental (after deducting all expenses of repossessing and reletting) that the Lessor may receive therefor."

. . . . . . . . . . . . . . .

Defendant filed an answer and cross petition. The latter is not involved in this appeal, and need not be noted further.

In its answer, the defendant admitted the execution of the lease on June 10, 1946, and admitted that the dates and manner of payment were mutually agreed upon as set out in the letter referred to, and further alleged:

"That at the time of the execution of said contract defendant paid plaintiff $6,000.00 in advance upon said principal sum of $12,600.00 and that thereafter and on July 24, 1946, defendant paid plaintiff the sum of $1050.00 and thereafter and on August 24, 1946, defendant paid plaintiff $1050.00 and that by reason thereof said agreement is fully paid up in accordance with its terms until February 24, 1947, and that there has been paid upon the payment due February 24, 1947, the sum of $750.00 and that this defendant has performed each, every and all of the terms and conditions of said agreement marked and referred to as Exhibit 'A' as amended by Exhibit 'B,' necessary upon its part to be performed and that it is not in default of any of the terms or conditions thereof."

. . . . . . . . . . . . . . .

Plaintiff's reply, filed January 21, 1947, was a general denial.

On May 26, 1947, plaintiff filed a motion for judgment on the pleadings, which motion after argument was overruled, and trial proceeded upon interrogatories and cross-interrogatories, objections

or answers thereto. The court having indicated its rulings with reference to the interrogatories, the trial proceeded before a jury on May 27, 1947. At the conclusion of plaintiff's evidence the defendant moved for a directed verdict in its favor, and the motion was sustained. The order for a directed verdict was based upon a finding that the action was prematurely begun, the court being of the opinion that the defendant was not then in default in its payments under the terms of the lease. A motion for new trial by plaintiff was overruled.

Prior to the order directing verdict for the defendant, numerous letters and wires exchanged between the parties, subsequent to execution of the lease and the down payment of $6,000, were received in evidence. This correspondence, to which reference will be made later, indicates the construction which both parties then placed upon the contract. The plaintiff also offered in evidence copies of option-to-purchase agreements alleged to have been entered into between the parties on June 10, 1946, the same day upon which the lease was executed, for the purpose of throwing light upon the lease agreement. This evidence was excluded.

Various depositions and exhibits, which had been excluded, were again offered on the motion for a new trial.

It was the view of the trial court that the written lease was not ambiguous in its terms; that on its face the total consideration involved in the transaction was $12,600; that the payment of $6,000 made when the lease was executed and the two monthly payments for July and August, 1946, should be applied upon such total consideration of $12,600 and that the defendant, accordingly, was not in default and that, therefore, the action of the plaintiff was premature. The court refused to admit the option-to-purchase agreements and other documentay evidence on the ground that the lease was not ambiguous, and that such evidence constituted an attempt to vary the terms of a written instrument.

We cannot agree with the trial court's construction of the lease. We think it is clear that the total consideration was $18,600; that the $6,000, referred to in separate item No. 4 and paid "in advance," when the lease was executed, was an entirely separate item in the total consideration, and had nothing to do with the twelve monthly payments of $1,050 each, provided for in paragraph 5 of the lease. If the $6,000 was to be considered advance payment on the monthly rental payments, paragraph 5 would be wholly incon-

sistent. The lessee therein specifically agreed to pay $1,050 a month, *beginning in July, 1946,* and "on the 7th day of each month thereafter, to and including June 7, 1947." By the letter hereinbefore noted, the date of the monthly payments was changed from the 7th to the 24th of each month.

However, if it should be thought uncertain whether the lease provided for a total consideration of $18,600, including the down payment of $6,000 and the twelve monthly rental payments, totaling $12,600, or whether the $6,000 constituted an advance payment on the monthly rental payments, all such doubt would be conclusively removed by the letters and telegrams received in evidence. It will suffice to note briefly the nature of this correspondence. It is clear that neither party regarded the down payment, under paragraph 4, as an advance payment on the monthly rental payments to be made under paragraph 5. On July 1, 1946, the defendant wrote the plaintiff stating that the shovel was shipped on June 24 "and we wish the payments set up accordingly—the 24th of *each month beginning July 24th,*" instead of on July 7. This was nearly a month after it had made the down payment of $6,000. (Italics supplied.)

Correspondence in August and September of 1946 discloses defendant's admission of delay in making the payments then due, and yet, as already noted, it had, many weeks before, made the down payment of $6,000 which, in itself, if applied on the monthly payments, would make no further payment due until December. On September 10, the defendant again asked the plaintiff to set up the date of payment of installments then due "for thirty days from the date on which such installments become due" and stated that they felt sure that from that time on, they would be able to take up the payments as they became due. On September 19, 1946, the defendant wired: "check covering *August* account in mail today." By this and other documentary evidence, not necessary to recite, the defendant completely negatived its present construction of the contract. (Italics supplied.)

The judgment is reversed and the cause remanded for further proceedings in harmony with this opinion.